UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MAGGIE F. SHAVERS                                                                    PLAINTIFF

VERSUS                                                                  NO. 1:12cv70-HSO-RHW

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                    DEFENDANT

## REPORT AND RECOMMENDATION

On March 6, 2012, counsel for Maggie F. Shavers filed this petition for judicial review of a final decision of the Commissioner of Social Security (Commissioner) rejecting Shavers' claim for Social Security disability benefits. Briefing is complete and the matter is now ripe for ruling.

## Factual Background and Procedural History

On April 1, 2009, Maggie Shavers filed application for Social Security disability benefits, alleging she became disabled August 15, 2007. [8, p. 61, 74] Shavers claimed she was unable to work because of bad knees, carpal tunnel syndrome in her arms, ankle problems and fibromyalgia. The claim was denied May 19, 2009 upon a finding that Shavers was not disabled under Social Security rules, and on July 16, 2009, Shavers' request for reconsideration was likewise denied.[1] [8, pp. 76-86] Shavers requested a hearing by an Administrative Law Judge (ALJ). [8, pp. 86]

On November 15, 2010, ALJ Margaret Sullivan conducted a hearing on the matter, receiving exhibits, and taking testimony from Shavers, who appeared with her attorney, and from vocational expert Stephanie May. Shavers testified she has a high school education and one year of schooling as a nursing assistant for which she received a certificate. [8, pp. 61, 112]

---

[1]Shavers has been represented by counsel since requesting reconsideration of the initial decision.

1

According to Shavers, she can stand no longer than 10-15 minutes without wobbling because her feet hurt; she can sit only 15-30 minutes before she has to get up and move because of back problems; she cannot walk one-quarter of a mile. She was unable to say how far she could walk because her knee gives out and she fears falling, but she is able to walk around Walmart with a shopping cart, and is able to carry groceries 30 feet from the car into the house. While she stated she cannot carry 20 pounds, she can carry gallon milk bottles with both hands. Shavers' typical day consists of taking her granddaughter to day care, checking on her mother, running errands and going to church during the week. She cooks, goes to the market and shops for food, sometimes washes dishes, and makes her own bed. She does not vacuum, mop, sweep or carry out trash as these activities hurt her back. Shavers has a drivers license and has no problem driving short distances (35-45 miles), but states that on longer drives her elbows "lock up," her fingers go numb and hurt, and her sciatic nerve on the left gives her problems. [8, pp. 62-66]

At the time of the hearing Shavers was 43 years old. She has not worked since she was 40, her last employment being as a teacher's assistant with Jackson County Civic Action in 2007. She testified she left that job because she hurt her left knee and needed surgery, and that the surgery worked pretty well though she cannot bend the knee fully. She testified at the time of the hearing she was having a problem with her right knee. [8, pp. 61-2]

<u>Medical Evidence</u>

The medical evidence presented for consideration by the ALJ consists of records from Eric Washington, M.D. [8, pp. 142-162]; Arthur Black, M.D. [8, pp. 163-167]; the Residual Functional Capacity Assessment performed by James Griffin, M.D. [8, pp. 168-175]; and medical records from Coastal Family Health Center (CFHC) [8, pp. 176-212, 213-220]. Dr.

Washington's records document seven office visits, from August 23, 2007 to February 21, 2008 and include an operative report for left knee arthroscopy performed January 2, 2008.

On August 23, 2007, Shavers complained to Dr. Washington of pain in her ankles and knees following a fall at Walmart on August 19, 2007. The records of this visit note right ankle tenderness with mild swelling, full range of motion and normal strength in the ankles and no other significant abnormalities. The impression was that Shavers had sustained various sprains/strains, primarily of the left knee and right ankle; and probably a lumbar strain with some localized tenderness in the left lower paralumbar region. [8, pp. 158-160] Shavers returned on August 30, 2007, complaining of constant pain. She was limping slightly and complained that her left (*sic*) ankle was worse and medications were not helping. These records note tenderness in the right ankle and foot with some swelling, but full range of motion and normal strength in both ankles and mild tenderness in both knees but full range of motion. Dr. Washington referred her to therapy to work on her back and ankles. [8, pp. 155-157] On September 20, 2007, Shavers reported she was a little better but complained of pain on her left side especially with sitting long periods. Range of motion was normal in both knees and ankles and strength was normal in both knees. [8, pp. 152-154] Two months later, on November 15, 2007, Shavers complained of soreness and increased pain with walking and standing, occasional buckling or locking of the left knee and some pain in the right knee. A left knee MRI was ordered. At this visit, Shavers' occupational history indicates she had to quit her teacher's assistant job due to her knees. [8, pp. 149-151] At her next appointment on December 5, 2007, the records note that the MRI showed a left knee meniscus tear and degenerative joint disease. [8, pp. 146-148] On January 2, 2008, Dr. Washington performed arthroscopic surgery on Shavers' left knee, and gave

3

a postoperative diagnosis of medial meniscus tear, medial compartment degenerative disease and grade II patellar chondromalacia with malalignment. [8, pp. 161-162] When Shavers returned for post-operative evaluation on January 23, 2008 she indicated she was doing okay and complained of some soreness. At a follow-up on February 21, 2008, she reported she was much better, complained of some weakness and pain, but she was noted to ambulate with a steady gait without assistive devices, and had normal range of motion. [8, pp. 142-145]

Dr. Black first saw Shavers January 29, 2009 when her chief complaint was right knee pain. By history she had been having right knee problems about a year and a half. Examination of the knee showed normal alignment, mild effusion, fine patellofemoral crepitus, medial compartment tenderness and mild lateral compartment tenderness with normal ligament stability and good strength. There was mild effusion of the left knee, mild patellofemoral crepitus, full range of motion and normal stability and strength. Dr. Black's impression was right knee arthritis, and he ordered an MRI of the right knee to rule out meniscus tear. [8, p. 163] A February 3, 2009 MRI showed a medial meniscus tear, chondromalacia in association with mild osteoarthritic changes, mild lateral patellar tracking and tilt and moderate effusion. [8, p. 166] When Dr. Black last saw Shavers on February 9, 2009, his impression was right knee degenerative changes and medial meniscus tear. He injected the knee with cortisone. [8, p. 164] CFHC records show that on February 16, 2009, Shavers reported her right knee was better after the steroid injection. [8, p. 198]

Dr. Griffin prepared a Physical Residual Functional Capacity Assessment on Shavers on May 18, 2009, stating a primary diagnosis of acute meniscus tear, and secondary diagnosis of diabetes. His evaluation indicates Shavers was able to lift/carry up to 20 pounds occasionally,

4

and up to 10 pounds frequently; that in an eight-hour workday she could stand/walk a total of six hours, sit a total of six hours, and had no push/pull limitations other than the previously noted weight restrictions; she could climb a ramp or stairs occasionally but not a ladder or rope or scaffold due to her morbid obesity; and balancing, stooping, kneeling, crouching and crawling could be done frequently. Dr. Black found no manipulative, visual, communicative or environmental limitations established. [8, pp. 168-175]

Shavers' CFHC records deal primarily with her regular medical care and medications. In fourteen visits between October 6, 2008 and January 21, 2010, the records mention joint pain or osteoarthritis eight times involving various body parts: the right shoulder, elbow and knee, the left shoulder, wrist, leg and knee. See records dated November 11, 2008, February 16, 2009, March 27, 2009, June 10 and 17, 2009, July 31, 2009, August 31, 2009 and January 21, 2010. [8, pp. 201, 207, 198, 185-87, 182-84, 180-81, 178-79, 176-177] Shavers stated on both the June 2009 visits that she was engaging in moderate physical activity five days a week, and on January 21, 2010 she reported she was walking three days a week. [8, pp. 185-87, 182-84, 176-77] When she complained of left leg or knee pain on July 31, 2009, August 31, 2009, and January 21, 2010, inspection of the leg was normal, there was no joint instability and she had normal range of motion. [8, pp. 176-181]

Shavers' four visits to CFHC from February 15-June 10, 2010, contain one complaint of joint pain involving shoulders, neck, knees and legs, and note a diagnosis of osteoarthritis primarily in the left leg. See records dated May 11, 2010. [8, pp. 215-16] On that date and on her last recorded visit on June 10, 2010, Shavers again indicated she was engaging in moderate physical activity five days a week. [8, pp. 213-216]

The ALJ also considered a Physical Capacities Evaluation prepared by Physician's Assistant R. Baltas, which indicated, among other things, that in an eight-hour workday Shavers could sit no more than two hours at a time or a total of six hours per day; could not stand/walk any length of time or a maximum of one hour total per day; that she had substantial restrictions on the weight she could lift or carry; she could use both arms and hands for repetitive simple grasping, pushing and pulling arm controls and fine manipulation, but could not use her legs and feet for any repetitive action such as pushing or pulling. This report is dated October 20, 2010, and states Shavers had the noted impairments for "about a year," and concludes that Shavers could work an eight-hour day within the stated limitations. [8, p. 221]

Vocational Evidence

At the hearing, ALJ Sullivan asked vocational expert Stephanie May whether there were any jobs in the national or regional economy for an individual of the same age, educational background and work history as Shavers, limited to sedentary work with restrictions that she be allowed to sit/stand alternately every ten minutes, to walk only limited distances, to lift up to eight pounds and with limited use of her upper extremities. May responded there are available in both the national economy and in Mississippi, appropriate sedentary jobs as a telemarketer, answering service operator, and dispatcher, which Shavers could do. [8, pp. 68-69]

**Standard of Review**

Judicial review of a final decision of the Commissioner is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Falco v. Shalala*, 27 F. 3d 160, 162 (5th Cir. 1994). "Substantial evidence is ... such relevant evidence as a reasonable

6

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Villa v. Sullivan*, 895 F. 2d 1019, 1022 (5th Cir. 1990.

The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) and citing *Johnson v. Bowen*, 864 F. 2d 340, 343-44 (5th Cir. 1988)) (footnotes and quotation marks omitted); *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F. 3d 744, 7445 (5th Cir. 2000). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the Commissioner applied an incorrect legal standard, or that the decision is unsupported by substantial evidence, the Court must affirm the Commissioner's determination. *Boyd*, 239 F.3d at 704.

As the one claiming disability benefits, Shavers bore the burden of proving a disability, that is, she was required to provide competent evidence of a medical or psychological condition precluding her from engaging in substantial gainful work. 20 C.F.R. § 404.1512(a); *Masterson v. v. Barnhart*, 309 F. 3d 267, 271 (5th Cir. 2002); *Selders*, 914 F. 2d at 618. Determination of a

disability claim involves a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i-v). Once the claimant establishes she can no longer perform past relevant work, given her residual functional capacity, the burden shifts to the Commissioner to come forward with evidence of other jobs existing in significant numbers that claimant could perform considering her residual functional capacity, age, education and work experience. *Harrell v. Bowen*, 862 F.2d 471, (5th Cir. 1988); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

ALJ Sullivan followed this evaluation process in deciding Shavers' claim, finding at step one, that Shavers was not engaged in substantial gainful activity as defined by Social Security regulations from her alleged onset date of August 15, 2007 through her date last insured of December 31, 2008. At step two, the ALJ found Shavers had severe impairments of carpel tunnel syndrome and arthritis which significantly limit her ability to perform basic work activities. At step 3, the ALJ found Shavers did not have an impairment or impairments which met or medically equaled the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, and that no physician of record provided findings or opined that Shavers' conditions precluded all forms of employment.

At step four, based upon the entire record, including all Shavers' reported symptoms, along with the objective medical evidence, the ALJ found Shavers had the residual functional capacity to perform sedentary work, with restrictions allowing a ten-minute sit/stand option, walking only limited distances, limited use of the upper extremities and an ability to lift a maximum of eight pounds. ALJ Sullivan expressly found Shavers' medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that Shavers' statements concerning the intensity, persistence and limiting effects of the symptoms "are not

credible to the extent they are inconsistent with the above residual functional capacity assessment." [8, p. 18]  Although Shavers was found to be unable to perform her past relevant work, at step five, the ALJ found the vocational evidence established she was capable of performing other jobs existing in the regional and national economies.

## Analysis

The only issue Shavers asks this Court to review is whether the ALJ erred "by failing to ask the vocational expert a proper hypothetical question." [9]  Shavers complains that the hypothetical posed to the vocational expert did not incorporate all Shavers limitations listed on the October 20, 2010 physical capacities evaluation prepared by Physician's Assistance R. Baltas. [8, p. 221]  Citing *Boyd v. Apfel*, 239 F.3d 698, 707-08 (5th Cir. 2001), both parties agree that hypothetical questions posed to a vocational expert must reasonably incorporate all of a claimant's limitations recognized or accepted by the ALJ, and the claimant must be afforded the opportunity to correct deficiencies in the ALJ's questions. [9, p. 6], [10, p. 5]  For the reasons which follow, the Court finds no error in the ALJ's hypothetical.

First, ALJ Sullivan was not required to adopt in its entirety the physical capacities evaluation (PCE) prepared by the physician's assistant. [8, p. 221]  Indeed, had she been required to do so, the October 20, 2010 PCE would have failed to demonstrate that Shavers was impaired on or before the date she was last insured (December 31, 2008), since the PCE indicates Shavers had been impaired as noted thereon for "about 1 year." [8, p. 221, ¶ VIII]  ALJ Sullivan did not recognize or accept the finding by the physician's assistant that Shavers could sit/stand/walk for a total of less than 8 hours a day, and was not therefore not required to incorporate such a finding into the hypothetical posed to the vocational expert.  Furthermore, the

9

PCE states Shavers could work an eight-hour day, 40 hours a week, within the noted limitations. [8, p. 121, ¶ IX]

Second, a physician's assistant is not listed as an acceptable medical source who can provide evidence to establish an impairment. 20 C.F.R., § 404.1513(a). The Commission "may also use evidence from" a physician's assistant to show the severity of impairments or their affect on the claimant's ability to work. 20 C.F.R. § 404.1513(d) That the use of such sources is discretionary with the Commission is plainly indicated by the use of the permissive term "may."

Finally, the Commission bears the ultimate responsibility to determine residual functional capacity based upon the totality of the evidence presented. 20 C.F.R. § 1527(d)(2), (3). As previously stated, issues of credibility of witnesses and weight to be given evidence are for the Commission to decide, and must be accepted by this Court if supported by substantial evidence. The undersigned is of the opinion that Shavers failed to carry her burden to show she was disabled from August 15, 2007 through December 31, 2008, and denial of benefits was proper.

## RECOMMENDATION

Upon consideration of the entire record of the proceedings below and the controlling law, the undersigned is of the opinion that the final decision rendered by the Commissioner is supported by substantial evidence and is in accord with relevant legal standards. Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days

to serve and file written objections to the Report and Recommendation. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge. Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge he does not intend to respond.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 20th day of December, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE